IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| IN RE; | ) | Case No. Bk 21-40038 |
| | ) | Chapter 11 Proceeding |
| Topp's Mechanical, Inc., | ) | |
| | ) | BRIEF OF AMERICAN EXCHANGE |
| Debtor | ) | BANK IN SUPPORT OF |
| | ) | CONFIRMATION |
| | ) | |

American Exchange Bank ("AEB") submits this brief in support of confirmation of the Debtor's Second Amended Chapter 11 Plan (Filing No. 72)(the "Plan").

## FACTS

The Debtor filed this case on January 15, 2021 electing to proceed under Subchapter V of Chapter 11 and has remained in possession of the assets of the estate as the debtor-in-possession. AEB is a secured creditor of the Debtor, the amount of the claims of AEB being $3,763,611.81 as set forth in its Proofs of Claim filed in this matter on February 12, 2021 as Claim No. 10 and on March 26, 2021 as Claim No. 28. On April 1, 2021 at Filing No. 35, AEB filed its election to have its claims treated as a secured claim pursuant to §1111(b) of the Bankruptcy Code. Under the Plan, the Debtor and AEB agreed to the treatment of the secured portion of the claim of AEB, by dividing the claim into three component parts for purposes of treatment under the Plan.

| Collateral values | Claim Amount |
|---|---|
| Real estate | $1,224,821.76 |
| Personal property | $ 898,873.12 |
| Unsecured portion (the "B Portion") | $1,639,916.93 |
| Total Claim | $3,763,611.81 |

The Trustee objected to confirmation of the Plan based on the fact that AEB is to receive payments attributable to the B Portion of its claim.

## ARGUMENT

The Plan should be confirmed.  Section 1111(b) makes one significant change to the treatment of AEB's claim in this case—because of the election, the claim of AEB is entitled to be treated as a wholly secured claim, instead of a claim that is bifurcated into a secured portion and an unsecured portion under §506(a).  "[S]ection 1111(b)(2) allows holders of certain partially secured claims to waive their unsecured deficiency claims and, contrary to section 506(a), have their entire debt treated as a secured claim."  7 Collier on Bankruptcy at ¶1111.03 (2020)("Collier's").  Norton Creditors' Rights Handbook, 18:49 (2020).  The Trustee objected to payments to AEB under the Plan based on the position that the payment provisions made for the B Portion of the AEB claim is inequitable when compared to the payments to the unsecured creditors.  The Trustee's position ignores the impact of the 1111(b) on payment terms under the Plan.

In adopting 1111(b) Congress made that decision that an electing creditor's claim is to be treated as a fully secured claim if a timely election is made.  No case was found in which the issue raised by the Trustee was addressed by the Court.  The In re Body Transit, Inc., 619 B.R. 816 (E.D. Pa. 2020) cited by the Trustee involved the issue of whether the secured creditor could make a §1111(b) election or whether its claim was of "inconsequential value" so that the §1111(b) election could not be made.  After an extensive discussion on the valuation evidence, the bankruptcy court concluded that the

value of the collateral—which the court valued at $80,000--was inconsequential when compared to the lender's nearly $1 million-dollar claim.

In the present case, there is no dispute over the $2,123,694.88 value of the collateral securing the AEB claim. No issue was raised that the collateral, comprising 56.4% of AEB's $3,763,611.81 claim, is not inconsequential. The issue raised is whether the payments to AEB under the Plan on its B Portion compared to the payments to the unsecured creditors is not fair and equitable.

The confirmation standard under §1191(c) that a plan be fair and equitable with respect to each class of claims includes the requirements under §1129(b)(2)(A). Collier's comments that:

> The language in section 1129(b)(2)(A)(i)(II) has caused unnecessary confusion. The statute states that an example of fair and equitable treatment for a secured class of claims includes the following, so long as the secured creditor retains its lien:
>
> that each holder of a claim of such class receive on account of such claim deferred cash payments [1] totaling at least the allowed amount of such claim, [2] of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property.
>
> If the section 1111(b)(2) election is not made, the amount of "deferred cash payments" necessary to satisfy phrase [2] will usually, if not always, equal or exceed the amount of such payments necessary to satisfy phrase [1]. This is because the wording of phrase [2] means that any proposed stream of payments must be reduced to present value, and that present value must equal the value of the collateral. Thus, if the plan calls for a note in the allowed amount of the claim to be given to the creditor, the reorganized debtor will have to pay interest. But phrase [1] will be satisfied by making payments "totaling" the value of the property, since under section 506(a), applicable in the absence of an election, the "allowed amount of such claim" will be the value of the collateral, and no more.

Collier's ¶1111.03[5][a] (footnotes omitted).

The plain language of §1111(b) nor Collier's nor Norton provide much clarity on the issue of how to balance the payments to AEB on account of the B Portion of its claim against the requirement that payments to unsecured creditors under the Plan the payments to the unsecured creditors under the Plan. Under 1111(b), AEB's claim is treated as fully secured, which means that the AEB payment should be made without regard to §506(a). Under the Plan, which AEB agrees complies with the requirements of §1111(b), AEB will receive payments equal to the value of its secured claim with interest over the 5-year term of the Plan. Then the balance due will be refinanced and AEB will receive payments equal to the full amount of its claim, $3,763,611.81 minus the payments received during the term of the Plan. There is no windfall to AEB as asserted by the Trustee. AEB is receiving what Congress intended when it adopted §1111(b).

The result suggested by the Trustee writes §1111(b) out of the Bankruptcy Code. If the creditor makes the election, and the 1111(b) portion of its claim is paid as though the election was not made, then what does the 1111(b) election provide to the creditor other than protection against a quick sale of depreciated collateral after confirmation? By making the election, AEB waived its unsecured claim. Under the Trustee's analysis, if AEB waives its unsecured claim and gets nothing on the B Portion under the Plan, AEB is in a worse position that it would have been had it not made the 1111(b) election.

The Plan complies with 1111(b). The unsecured creditors are not treated unfairly or inequitably, given that Congress adopted 1111(b) that allows secured creditors to make the election made by AEB in this case.

The Plan should be confirmed.

Dated:  October 15, 2021.

        AMERICAN EXCHANGE BANK,
        Creditor

        By:  KNUDSEN, BERKHEIMER,
         RICHARDSON & ENDACOTT, LLP
        3800 VerMaas Place, Suite 200
        Lincoln, Nebraska 68502
        (402) 475-7011


        By: /s/   Trev E. Peterson - #16637
          One of Said Attorneys

## PROOF OF SERVICE

I certify that on October 15, 2021 I electronically filed the foregoing with the Clerk of the United States Bankruptcy Court for the District of Nebraska using the CM/ECF system which sent notification of such filing to the following: Jerry Jensen, Assistant US Trustee, James Overcash, Chapter 11 Trustee, Justin D. Eichmann and on all others requesting electronic notice of filings through the Court's CM/ECF System.


        /s/   Trev E. Peterson - #16637