### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN RE:<br><br>TOPP'S MECHANICAL, INC.,<br><br>Debtor. | Case No. 21-40038-TLS<br>(Chapter 11) |

### DEBTOR'S FIRST AMENDED PLAN OF LIQUIDATION
### FOR A SMALL BUSINESS UNDER CHAPTER 11, SUBCHAPTER V,
### OF THE UNITED STATES BANKRUPTCY CODE

### Background for Cases Filed Under Subchapter V

**A.    Description and History of the Debtor's Business.**

Topp's Mechanical, Inc. (the "Debtor"), which is based out of Tecumseh, Nebraska, is a mechanical contractor involved in new and repair work of piping systems (steel, carbon and stainless steel), millwright work (connecting equipment to power) and rigging. The Debtor maintains a full fabrication shop in Tecumseh. It has two plasma machines, a press, and plate roller. The shop is an ASME code shop with "R," "S" and "U" stamps.

The Debtor also specializes in the design, engineering, fabrication, installation and servicing $CO_2$ plants. Ethanol and chemical plans which produce $CO_2$ are retained to its liquid state through the $CO_2$ plants.

The Debtor's clients include ethanol plans, chemical plants and any plant using pressure vessels, catwalks, platforms and specialized equipment. After fabrication at the Tecumseh shop, the Debtor installs and services the equipment.

The Debtor's competitors are mechanical contractors throughout Nebraska and the surrounding states who have the same shop and certification capacity.

**B.    Liquidation Analysis.**

To confirm the Debtor's Plan of Liquidation (the "Plan"), the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. The liquidation analysis required by 11 U.S.C. § 1190 is attached to the Plan as **Exhibit A**. In a liquidation, non-priority unsecured creditors and equity interest holders would receive $0.00, and therefore a 0.00% distribution on their claims.

1

**C.    Plan of Liquidation.**

The Debtor has determined that it will be unable to operate its business in a manner that will allow the Debtor to have the ability to make future Plan payments and operate without further reorganization.  The Debtor has ceased operations, and the Debtor has determined that an orderly liquidation of the Debtor's assets is proper and in the best interest of the Debtor and the Debtor's creditors.

The source of funds to achieve the distributions and to carry out the Plan shall be the Debtor's cash and the liquidation of the Debtor's remaining assets.

The Debtor shall attempt to liquidate, diligently and for the highest value reasonably possible, the Debtor's remaining assets.  The Debtor may liquidate or abandon the remaining assets, including causes of action, based on the Debtor's business judgment, without the need for further order of the Bankruptcy Court.

In order to carry out its duties under the Plan, the Debtor, in addition to its other rights under the Plan, shall have the right (a) to, subject to approval by American Exchange Bank, retain and reasonably compensate professionals and other persons to assist the Debtor in the liquidation of the Debtor's remaining assets, and (b) to employ such other procedures not inconsistent with the Plan.

## ARTICLE 1:  SUMMARY

This Plan under Chapter 11, Subchapter V, of the United States Bankruptcy Code (the "Code" or the "Bankruptcy Code") proposes to pay creditors of the Debtor holding (1) priority claims and (2) secured claims from the Debtor's cash and the liquidation of the Debtor's remaining assets.

This Plan provides for:

| | |
|---|---|
| 0 | Class of Priority Claims |
| 5 | Classes of Secured Claims |
| 1 | Class of Non-priority Unsecured Claims |
| 1 | Class of Equity Security Holders |

**Payment of non-priority unsecured claims:**  The Debtor projects that allowed non-priority unsecured creditors will not receive payments under the Plan.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

2

*Your rights may be affected. You should read these papers carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

## ARTICLE 2: CLASSIFICATION OF CLAIMS AND INTERESTS

**Class 1**. All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8).

**Class 2**. The claims of **American Exchange Bank**, to the extent allowed as a secured claim under § 506 of the Code.

**Class 3**. The claims of **First Midwest Equipment Finance Co.**, to the extent allowed as a secured claim under § 506 of the Code.

**Class 4**. The claim of **Jacobi Carbons, Inc.**, to the extent allowed as a secured claim under § 506 of the Code.

**Class 5**. The claim of **Johnson County Treasurer**, to the extent allowed as a secured claim under § 506 of the Code.

**Class 6**. The claim of **U.S. Small Business Administration** to the extent allowed as a secured claim under § 506 of the Code.

**Class 7**. All non-priority unsecured claims allowed under § 502 of the Code.

**Class 8**. Equity interests of the Debtor.

IPFS Corporation initially filed a claim in the amount of $28,604.35, of which $22,672.18 was claimed to be secured and $5,932.17 was claimed to be unsecured (Claim No. 15). However, on May 7, 2021, IPFS Corporation withdrew its claim in its entirety (Doc. No. 49). IPFS Corporation is not a creditor of the Debtor, and will not be treated as a creditor of the Debtor.

## ARTICLE 3: TREATMENT OF ADMINISTRATIVE EXPENSES, PRIORITY TAX CLAIMS. AND QUARTERLY AND COURT FEES

**3.01: Unclassified claims**. Under section § 1123(a)(1), allowed administrative expenses and priority tax claims are not in classes.

**3.02: Administrative expenses**. Administrative expenses allowed under § 503 of the Code will be paid in full, in cash, after the Debtor has received sufficient funds from the sale of certain assets of the Debtor that secured creditors do not have a perfected lien on under the Bankruptcy Code (such as titled vehicles), or upon such other terms as may be agreed upon by the holder of the claim and Debtor.

**3.03: Priority tax claims**. Each holder of an allowed priority tax claim will be paid in full upon the effective date of the Plan. Any distribution paid pursuant to this section is made in full settlement, release and discharge of all priority tax claims. The Debtor estimates the current amount of such claims to be as follows: (a) IRS - $132.13; (b) Nebraska Department of Revenue- $0.00. The balance of the IRS's claim, in the amount of $4,143.27, will be treated as a non-priority unsecured claim under the Plan.

**3.04: Statutory fees**. All unpaid fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan will be paid on or before the effective date.

**3.05: Prospective quarterly fees**. All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) are not applicable.

**ARTICLE 4: TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

**4.01: Claims and interests are treated as follows under this Plan**:

| Class | Impairment | Treatment |
| --- | --- | --- |
| Class 1: Priority Claims | ☐ Impaired<br>**X** Unimpaired | The Debtor has no known claims in this class. |
| Class 2: Secured Claims of American Exchange Bank | **X** Impaired<br>☐ Unimpaired | American Exchange Bank has filed two (2) claims totaling $3,763,611.81. The debt represented by these claims are guaranteed by the U.S. Small Business Association. The debt is also secured by all of the Debtor's real and all or substantially all of the Debtor's personal property used in the operation of the Debtor's business.<br><br>**Real Estate Claim:**<br><br>The value of the Debtor's real property is appraised at $1,248,000.00, as set forth in an appraisal prepared by Appraisal One on or about March 31, 2021. The Debtor's real property has unpaid property taxes in the amount of $23,178.24, which taxes are superior to American Exchange Bank's lien on Debtor's real property. American Exchange Bank's secured interest in the Debtor's real property is $1,224,821.76. |

4

|  |  | The Debtor shall list the real property with a real estate agent experienced with the marketing and selling of commercial real estate, and the real estate agent must be approved by American Exchange Bank, which approval will not be unreasonably withheld, conditioned or delayed. The Debtor will make reasonable efforts to list the real property by March 26, 2022. |
|--|--|--|
|  |  | Until such time as the real property is sold, the Debtor shall pay from available funds in the debtor-in-possession account at Bank of the West (the "DIP Account") all necessary utilities servicing the Debtor's real property and all premiums for insurance insuring the Debtor's real property. Further, if the real estate agent recommends that certain improvements be made to the Debtor's real property to increase its marketability and salability, such improvements may be made upon the mutual agreement of the Debtor and American Exchange Bank, and the costs for such improvements shall be paid from available funds in the DIP Account. |
|  |  | The sale of the Debtor's real property shall be free and clear of any and all security interests, liens and other encumbrances. American Exchange Bank shall reasonably cooperate with the Debtor in the sale of the Debtor's real property, including, but not limited to, providing a deed of reconveyance and any other releases reasonably necessary to release American Exchange Bank's lien in the Debtor's real property. |
|  |  | Under section 1146(c) of the Bankruptcy Code, the making or delivery of an instrument of transfer under a plan may not be taxed under any law imposing a stamp tax or similar tax. Pursuant thereto and because the Debtor is liquidating its |

5

|  |  | real property hereunder, entry of the confirmation Order shall be a determination that no stamp tax, transfer tax or similar tax may be imposed on any sale of the Debtor's real property.<br><br>All proceeds from the sale of the real property, after customary costs of the sale and the payment of delinquent real estate taxes, shall be paid to American Exchange Bank.<br><br>Upon the entry of the confirmation order by the Bankruptcy Court, all matters provided under the Plan shall be deemed authorized and approved without further approval from the Bankruptcy Court. The confirmation order shall act as an order modifying the Debtor's by-laws such that the provisions of this Plan can be effectuated. The Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve the sale of the Debtor's real property and carry out the Plan and to effectuate the distributions provided for thereunder.<br><br>**Personal Property Claim:**<br><br>The value of the Debtor's personal property is $1,071,172.62. First Midwest Equipment Finance Co., filed a claim in the amount of $172,299.50, which amount the Debtor has disputed. The Debtor and First Midwest Equipment Finance Co., have agreed upon and stipulated that the unpaid amount of the claim is $156,422.58, which claim is superior to American Exchange Bank's lien on a crane. American Exchange Bank's secured interest in the Debtor's personal property is approximately $914,750.01.<br><br>Until April 25, 2022 (the "Private Sale Period"), the Debtor shall have the right to |
|---|---|---|

6

| | | |
|---|---|---|
| | | sell all or any portion of the Debtor's personal property at sales prices greater than or equal to the appraised value for such items of personal property as set forth in the appraisal performed by Appraisal One dated March 30, 2021.  The Debtor shall provide American Exchange Bank with a list of items of the Debtor's personal property that the Debtor proposes to sell after the Debtor receives an offer from a prospective buyer to purchase said items of personal property. |
| | | During the Private Sale Period, the Debtor shall hire an auctioneer approved by American Exchange Bank, which approval will not be unreasonably withheld, conditioned or delayed, to conduct an auction sale, whether one or more, of the Debtor's personal property.  The auctioneer should be experienced in the marketing and selling of the types of machinery, equipment and tools owned by the Debtor, including any such machinery, equipment and tools that are specialized. The number and types of auctions to be performed by the auctioneer will be mutually agreed upon by the Debtor and American Exchange Bank, after taking into consideration any recommendations from the auctioneer.  The first auction sale, if more than one auction sale is scheduled, must occur no later than May 4, 2022, subject to the auctioneer's availability, or at such later date as may be agreed to by American Exchange Bank. |
| | | If the auctioneer recommends that certain inoperable items of the Debtor's personal property be repaired or refurbished to increase their marketability and salability, such repairs or refurbishments may be made upon the mutual agreement of the Debtor and American Exchange Bank, and |

7

|  |  | the costs for such repairs or refurbishments shall be paid from available funds in the DIP Account. |
|---|---|---|
|  |  | The sale of the Debtor's personal property shall be free and clear of any and all security interests, liens and other encumbrances. American Exchange Bank shall reasonably cooperate with the Debtor in the sale of the Debtor's personal property, including, but not limited to, providing any releases reasonably necessary to release American Exchange Bank's lien in the Debtor's personal property being sold. |
|  |  | Pursuant to 11 U.S.C. § 363(k), American Exchange Bank may credit bid at any auction sale. |
|  |  | Under 11 U.S.C. § 1146(c) of the Bankruptcy Code, the making or delivery of an instrument of transfer under a plan may not be taxed under any law imposing a stamp tax or similar tax. Pursuant thereto, and because the Debtor is liquidating its personal property hereunder, entry of the confirmation order shall be a determination that no stamp tax, transfer tax or similar tax may be imposed on any sale of the Debtor's personal property. |
|  |  | All proceeds from the sale of the Debtor's personal property, after customary costs of the sale, shall be paid to American Exchange Bank, except for those proceeds related to assets of the Debtor that American Exchange Bank does not have a perfected lien in under the Bankruptcy Code (such as titled vehicles), which proceeds will be paid to the Debtor and deposited into the DIP Account.. |
|  |  | Upon the entry of the confirmation order by the Bankruptcy Court, all matters |

| | | |
|---|---|---|
| | | provided under the Plan shall be deemed authorized and approved without further approval from the Bankruptcy Court. The confirmation order shall act as an order modifying the Debtor's by-laws such that the provisions of this Plan can be effectuated. The Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve the sale of the Debtor's personal property and carry out the Plan and to effectuate the distributions provided for thereunder.<br><br>**Unsecured Claim:**<br><br>The remaining portion of American Exchange Bank's allowed claim that is not paid as a result of the liquidation of the Debtor's real property and the Debtor's personal property will be treated as a non-priority unsecured claim under the Plan. |
| Class 3: Secured Claim of First Midwest Equipment Finance Co. | ☐ Impaired<br>**X** Unimpaired | First Midwest Equipment Finance Co. filed a claim in the amount of $172,299.50, which amount the Debtor has disputed. The Debtor and First Midwest Equipment Finance Co., have agreed upon and stipulated that the unpaid amount of the claim is $156,422.58. First Midwest Equipment Finance Co. holds a purchase money security interest in Debtor's 2004 Grove TMS900E 90 Ton Rough Terrain Crane w/a Nelson 3-Axle Dolly (VIN: 1N9G62A3541012808) (the "Crane").<br><br>The Crane will be sold in the same manner described in the Plan for the sale of the Debtor's other personal property. The sale of the Crane shall be free and clear of any and all security interests, liens and other encumbrances. First Midwest Equipment Finance Co. and American Exchange Bank |

|  |  | shall reasonably cooperate with the Debtor in the sale of the Crane, including, but not limited to, providing any releases reasonably necessary to release First Midwest Equipment Finance Co.'s and American Exchange Bank's liens in the Crane. |
|---|---|---|
|  |  | Under section 1146(c) of the Bankruptcy Code, the making or delivery of an instrument of transfer under a plan may not be taxed under any law imposing a stamp tax or similar tax. Pursuant thereto and because the Debtor is liquidating the Crane hereunder, entry of the confirmation Order shall be a determination that no stamp tax, transfer tax or similar tax may be imposed on the sale of the Crane. |
|  |  | All proceeds from the sale of the Crane, after customary costs of the sale, shall be paid to First Midwest Equipment Finance Co., up to $156,422.58, and the remaining proceeds, if any, to American Exchange Bank. |
|  |  | Upon the entry of the confirmation order by the Bankruptcy Court, all matters provided under the Plan shall be deemed authorized and approved without further approval from the Bankruptcy Court. The confirmation order shall act as an order modifying the Debtor's by-laws such that the provisions of this Plan can be effectuated. The Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve the sale of the real property and carry out the Plan and to effectuate the distributions provided for thereunder. |

| | | |
|---|---|---|
| <u>Class 4</u>: Secured Claim of Jacobi Carbons, Inc. | **X** Impaired<br>☐ Unimpaired | Jacobi Carbons, Inc., has filed a claim in the amount of $51,847.21, and asserts that its claim is secured by all goods, inventory and/or products purchased by the Debtor from Jacobi Carbons, Inc., including those set forth in Purchase Order No. 18206-131. The Debtor is not in possession of any goods, inventory and/or products sold by Jacobi Carbons, Inc., and all such goods, inventory and/or products set forth in Purchase Order No. 18206-131 were incorporated into a project the Debtor completed pre-petition. The Debtor disputes Jacobi Carbons, Inc.'s claim is a secured debt and will be filing an objection to said claim. Jacobi Carbons, Inc.'s claim will be treated as a non-priority unsecured claim under the Plan. |
| <u>Class 5</u>: Secured Claim of Johnson County Treasurer | **X** Impaired<br>☐ Unimpaired | Johnson County Treasurer filed a claim in the amount of $23,178.24. This claim represents unpaid real property taxes and it is secured by Debtor's real property.<br><br>The Debtor shall list the real property with a real estate agent experienced with the marketing and selling of commercial real estate, and the real estate agent must be approved by American Exchange Bank, which approval will not be unreasonably withheld, conditioned or delayed. The Debtor will make reasonable efforts to list the real property within sixty (60) days from the date the Plan is filed.<br><br>The sale of the Debtor's real property shall be free and clear of any and all security interests, liens and other encumbrances.<br><br>Under section 1146(c) of the Bankruptcy Code, the making or delivery of an instrument of transfer under a plan may not be taxed under any law imposing a |

| | | |
|---|---|---|
| | | stamp tax or similar tax. Pursuant thereto and because the Debtor is liquidating its real property hereunder, entry of the confirmation Order shall be a determination that no stamp tax, transfer tax or similar tax may be imposed on any sale of the Debtor's real property. |
| | | Payment delinquent property taxes to the Johnson County Treasurer shall be paid at the closing of the sale of the Debtor's real property and shall be paid from the proceeds from the sale of the Debtor's real property. All proceeds from the sale of the real property, after customary costs of the sale and the payment of delinquent real estate taxes, shall be paid to the Debtor and shall be deposited in the debtor-in-possession account at Bank of the West. |
| | | Upon the entry of the confirmation order by the Bankruptcy Court, all matters provided under the Plan shall be deemed authorized and approved without further approval from the Bankruptcy Court. The confirmation order shall act as an order modifying the Debtor's by-laws such that the provisions of this Plan can be effectuated. The Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve the sale of the real property and carry out the Plan and to effectuate the distributions provided for thereunder. |
| Class 6: Secured Claim of U.S. Small Business Administration | **X** Impaired<br>☐ Unimpaired | The U.S. Small Business Administration ("SBA") filed a claim in the amount of $153,051.37. This claim represents an unpaid disaster loan and it is secured by Debtor's personal property. |
| | | The SBA's lien position in the Debtor's personal property is junior to American Exchange Bank's lien position in the |

12

| | | |
|---|---|---|
| | | Debtor's personal property.  Since the value of the Debtor's personal property is not sufficient to cover the SBA's claim, the SBA's claim will be treated as a non-priority unsecured claim under the Plan. |
| Class 7: Non- priority unsecured claims | **X** Impaired<br>☐ Unimpaired | Non-priority unsecured claims shall not receive any payments or distributions under this Plan. |
| Class 8: Equity interests of the Debtor | ☐ Impaired<br>**X** Unimpaired | Luke G. Topp and Ria Topp, husband and wife, shall retain their ownership interests in the Debtor as they currently exist. |

## ARTICLE 5:  ALLOWANCE AND DISALLOWANCE OF CLAIMS

**5.01: Disputed claim**.  *A disputed claim* is a claim that has not been allowed or disallowed and as to which either: (i) A proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**5.02: Delay of distribution on a disputed claim**.  No distribution will be made on account of a disputed claim unless and until it is allowed.

**5.03: Settlement of disputed claims**.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE 6:  PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.01:  Assumed executory contracts and unexpired leases**.

(a)    The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date of the Plan:  None.

(b)    Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, either before the effective date or under section 6(a) of this Plan, or that are the subject of a pending motion to assume, and

if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date on which the court enters the order confirming this Plan.

### ARTICLE 7:  MEANS FOR IMPLEMENTATION OF THE PLAN

The Debtor will implement the provisions of the Plan by:

(a)    Source of Payments.  Payments and distributions under the Plan will be funded by the Debtor's cash and the liquidation of the Debtor's remaining assets.

### ARTICLE 8:  GENERAL PROVISIONS

**8.01: Definitions and rules of construction**.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:  None.

**8.02: Effective date**.  The effective date of this Plan is the day that is 14 days after the entry of the confirmation order.  If, however, a stay of the confirmation order is in effect on that date, the effective date will be the day after the date on which the stay expires or it otherwise terminated.  These periods are calculated as provided in Federal Rule of Bankruptcy Procedure 9006(a)(1).

**8.03: Severability**.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**8.04: Binding effect**.  The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**8.05: Captions**.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**8.06: Controlling effect**.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Nebraska govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**8.07: Corporate governance.** Prior to the effective date of the Plan, and in compliance with § 1123(a)(6) of the Code, the Debtor's bylaws will be updated to prohibit the issuance of any non-voting stock. Furthermore, Luke G. Topp and Ria Topp shall remain as Debtor's officers and directors after confirmation of the Plan.

**8.08: Retention of Jurisdiction.** The Bankruptcy Court confirming the Plan shall retain jurisdiction of this case with regard to the following matters: (a) to make such orders as may be necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of this Plan; (b) to rule on any modification of the Plan proposed under § 1193 of the Code; (c) to hear and allow for all applications for compensation to professionals and other administrative expenses; (d) to resolve all issues regarding claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases; and (e) to adjudicate any cause of action which may exist in favor of Debtor, including preference and fraudulent transfer causes of action.

## ARTICLE 9: DISCHARGE

If the Plan is confirmed under § 1191(a) of the Code, on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt:

(a)  imposed by this Plan: or

(b)  to the extent provided in § 1141(d)(6).

Upon the liquidation of the Debtor's assets, and disbursement of the payments and distributions as provided in the Plan, the Debtor shall file a report with the Bankruptcy Court and request the entry of a Final Decree closing the Chapter 11 Case.

## ARTICLE 10: OTHER PROVISIONS

**10.1: Title to Assets.** Except as otherwise provided in the Plan or in the order confirming the Plan, all of the property of the estate shall vest in the Debtor upon confirmation, free and clear of all liens, claims and encumbrances, provided that each secured creditor identified in the Plan and treated as a secured creditor under the Plan shall retain its security interest in such property to the same extent and with the same priority as it had prior to confirmation.

DATED this 23rd day of March, 2022.

        TOPP'S MECHANICAL, INC., Debtor

By: /s/ Justin D. Eichmann
    Justin D. Eichmann - #22405
    Ryan J. Dougherty - #22137
    HOUGHTON BRADFORD WHITTED PC LLO
    6457 Frances Street, Suite 100
    Omaha, Nebraska 68106
    (402) 344-4000 | (402) 933-1099 Fax
    jeichmann@houghtonbradford.com
    rdougherty@houghtonbradford.com
    *Attorneys for Debtor*

593290

## EXHIBIT A

## LIQUIDATION ANALYSIS

**Assets**

| | | | |
|---|---|---|---|
| 1. | Cash on hand | $ | 90,069.85[1] |
| 2. | Accounts receivable | $ | 459,914.37[2] |
| 3. | Raw Materials | $ | 50,000.00 |
| 4. | Other Inventory and Supplies | $ | 150,000.00 |
| 5. | Office Furniture | $ | 12,500.00 |
| 6. | Office Equipment | $ | 12,500.00 |
| 7. | 1997 GMC K-2500 Pickup | $ | 350.00 |
| 8. | 2005 F350 EXT Cab Flatbed | $ | 4,750.00 |
| 9. | 2001 Ford F350 (Orange/Red Crew Cab) | $ | 4,000.00 |
| 10. | 2000 F550 Culligan Truck | $ | 4,750.00 |
| 11. | Trailer H | $ | 2,000.00 |
| 12. | 2006 Ford F150 (Davey) | $ | 6,250.00 |
| 13. | 2001 Ford Ranger | $ | 500.00 |
| 14. | PJ Trailer | $ | 1,250.00 |
| 15. | 2015 Golden Flatbed Trailer | $ | 3,250.00 |
| 16. | 1999 Transcraft Trailer | $ | 3,000.00 |
| 17. | 2004 F450 – Luke Rig | $ | 3,750.00 |
| 18. | 1971 Amer Gen 6x6 Semi | $ | 2,500.00 |
| 19. | 1999 Ford F250 (White) – Utility Box | $ | 7,000.00 |
| 20. | Gantry Shape Cutting Machine | $ | 125,000.00 |
| 21. | 6 Pack Welder | $ | 16,000.00 |
| 22. | Miller Trailblazer Welder 325 | $ | 1,000.00 |
| 23. | Weld Positioner/Subarc Welding Machine | $ | 12,500.00 |
| 24. | 7.5 Ton Bridge Crane | $ | 3,000.00 |
| 25. | 2004 90 Ton Grove Crane | $ | 200,000.00[3] |
| 26. | 2 Miller XMT 204 | $ | 6,000.00 |
| 27. | 4 Pack Welder | $ | 10,000.00 |
| 28. | Refrigerator | $ | 75.00 |
| 29. | Broderson IC 80 Yardrunner Carry Deck | $ | 16,500.00 |
| 30. | Drott Carrydeck 85RM | $ | 3,500.00 |
| 31. | Refrigerator and Microwave | $ | 100.00 |
| 32. | Komatsu 10000 Forklift | $ | 8,000.00 |
| 33. | Pand Jiris | $ | 2,750.00 |
| 34. | C-500DS Horizontal Band Saw | $ | 12,500.00 |
| 35. | Bridge Crane Wazee | $ | 20,000.00 |

---

[1] Based upon amount set forth in April 2021 Operating Report (Doc. 52).
[2] Based upon amount set forth in April 2021 Operating Report (Doc. 52).
[3] Purchase price to be paid by D & K Agri Sales, Inc., set forth in Application to Sell Property (Doc. 46).

| | | | |
|---|---|---|---:|
| 36. | Trailblazer Welder TB275 | $ | 1,000.00 |
| 37. | Lull Forklift | $ | 15,000.00 |
| 38. | 2004 6000 Hyster Forklift | $ | 7,000.00 |
| 39. | Air Skates Rig Set | $ | 4,000.00 |
| 40. | Feeders | $ | 1,000.00 |
| 41. | Wiggins 20000 Forklift | $ | 20,000.00 |
| 42. | Gantry Crane Lifting System | $ | 200,000.00 |
| 43. | 3 Connexs | $ | 3,000.00 |
| 44. | 5 Ton Hoists | $ | 900.00 |
| 45. | Miscellaneous Shop Tools | $ | 3,500.00 |
| 46. | 2 Miller Trailblazer Welder | $ | 2,000.00 |
| 47. | Plasma Cutter | $ | 1,000.00 |
| 48. | Shop Tools | $ | 3,000.00 |
| 49. | Heat Treatment | $ | 5,000.00 |
| 50. | John Deere Gator | $ | 1,250.00 |
| 51. | Wiggins 15000 Forklift | $ | 12,500.00 |
| 52. | Miller 350P S/N MB496120N | $ | 7,000.00 |
| 53. | Swanson Tank Line | $ | 22,000.00 |
| 54. | Bobcat | $ | 10,000.00 |
| 55. | DC 1000 Welder | $ | 8,500.00 |
| 56. | Blue Hyster 30000 Forklift | $ | 25,000.00 |
| 57. | 1969 Twin Momanche Airplane and Airplane Cylinder | $ | 75,000.00 |
| 58. | 1225 Lincoln Street, Tecumseh, NE 68450 and 261 North 13th Street, Tecumseh, NE 68450 | $ | 1,248,000.00[4] |
| 59. | Life Insurance Policy – Minnesota Life | $ | 112,000.00 |
| | **Total Assets at Liquidation Value** | $ | **2,319,172.62** |

**LESS: Secured Claims**

| | | | |
|---|---|---|---:|
| 1. | American Exchange Bank | $ | 3,763,611.81 |
| 2. | First Midwest Equipment Finance Co. | $ | 172,299.50 |
| 3. | Jacobi Carbons, Inc. | $ | 51,847.21 |
| 4. | Johnson County Treasurer | $ | 23,178.24 |
| 5. | U.S. Small Business Association | $ | 153,051.37 |

**LESS: Priority Tax Claims**

| | | | |
|---|---|---|---:|
| 1. | Internal Revenue Service | $ | 132.13 |
| | **BALANCE AVAILABLE FOR UNSECURED CLAIMS** | $ | **(1,844,947.64)** |

Since the secured claims and priority tax claims exceed the value of the Debtor's assets, a Chapter 7 Trustee would not liquidate any of the assets. Therefore, there wouldn't be any Chapter 7 administrative fees, no costs of liquidation, and no capital gains tax. The unsecured creditors would receive $0.00 or 0% distribution in a Chapter 7 bankruptcy.

---

[4] Based upon appraisal performed by Appraisal One dated March 30, 2021.